## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN MICHAEL LEDCKE** | : | **Civil No. 1:12-CV-1580** |
| | : | |
| **Plaintiff,** | : | **(Judge Jones)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **CORRECTIONS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM ORDER</u>

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

This is a *pro se* civil rights lawsuit brought by Shawn Ledcke, a federal prisoner. This case is proceeding to trial on a specific excessive force and failure to intervene claim lodged by Ledcke against prison officials at a county jail where he was held in August 2010. At that time, the plaintiff, Shawn Ledcke was a federal detainee, housed in the Lackawanna County Prison. Ledcke was held at this facility from June 2010 until September 2010, while he awaited sentencing of federal assault charges arising out of an assault on prison staff at the United States Penitentiary, Canaan. On August 9, 2010, Ledcke was embroiled in a physical confrontation with Lackawanna County Prison staff. According to Ledcke, on the afternoon of August 9, 2010, he was assaulted by prison staff without provocation and suffered serious

injuries.  Ledcke has identified Correctional Officers Blume, Schnipes, Robinson and Talluto as his assailants.  Ledcke has further averred that two supervisory officials at the prison, Captain Chiarelli and Sergeant Shanley, were present during this assault but failed to intervene.

With the issues in this case framed in this fashion, we have entered a scheduling order setting this case for a pretrial conference on January 18, 2016, and for jury selection and trial on February 8, 2016.  (Doc. 135.)  As this date has approached, we have received several filings from the plaintiff which we will address below in order to enable this case to proceed efficiently at trial.

## I.      Ledcke's Motion to Preclude Defense Motions in Limine is Dismissed as Moot

First, the plaintiff filed a motion which sought to preclude the defendants from filing any motions in limine.  (Doc. 139.)  The defendants have not filed any motions in limine and the deadline for such motions has passed.  Therefore, the motion is preclude defendants from filing motions which they have elected not to file is MOOT and is DISMISSED.

## II.     Ledcke's Motion in Limine is Granted, in Part, and Denied, in Part

Second, Ledcke has filed a motion in limine which seeks to totally preclude the defendants from making any reference to his prior criminal record in the trial of this

case. (Doc. 132.) For the reasons set forth below, this motion will be granted, in part, and denied, in part, in that we will permit cross-examination regarding the fact of prior convictions, but will restrict the scope of that cross-examination in a fashion which has previously been approved by the courts in similar circumstances.  Further, to the extent this evidence regarding the plaintiff's violent criminal past informed the defendants' judgment "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them," Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000), it will be admissible subject to the limitations imposed by Rules 402 and 403 of the Federal Rules of Evidence, and in assessing the degree of force that the defendants perceived was necessary in August of 2010, "Defendants may testify to their knowledge that [Ledcke] was convicted of crimes of violence and the length of his sentences," Womack v. Smith, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012), but defendants may not describe the specific nature of those offenses.

Our analysis of these competing claims is guided at the outset by Federal Rule of Evidence 609 which provides as follows:

> (a) General rule.  For the purpose of attacking the character for truthfulness of a witness,
>
> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was

punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and

(2) evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

b) Time limit.  Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.  However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Fed. R. Evid. 609.

As written, Rule 609 is expressly subject to the balancing requirement set forth

in Rule 403 of the Federal Rules of Evidence, which  provides that:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

With respect to this balancing of probative value and prejudicial impact commanded by Rule 403, although evidence may be excluded pursuant to Rule 403 prior to trial, the Third Circuit has cautioned that "pretrial Rule 403 exclusions should rarely be granted. . . . Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." In re Paoli R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1990); see also, Spain v. Gallegos, 26 F.3d 439, 453 (3d Cir. 1994) (noting the Third Circuit's "cautious approach to Rule 403 exclusions at the pretrial stage . . . ."). Moreover, the Third Circuit has characterized Rule 403 as a "trial-oriented rule" such that "[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are . . . unfair and improper." In re Paoli R. Yard PCB Litig., 916 F.2d at 859.

Upon consideration of these issues of relevance and potential for prejudice resulting from impeachment of witnesses through their prior convictions, and mindful of the Third Circuit's cautious approach to Rule 403 challenges, we find that plaintiff's motion to wholly exclude evidence of his prior convictions should be denied for at least two reasons. First, Rule 609(a) makes clear that evidence of felony convictions is indeed relevant to a jury's effective evaluation of witness credibility.

Rule 609(a) states that the evidence of a witness's felony conviction "shall be admitted" except for those instances where Rule 403 or the time limit of Rule 609(b) demands otherwise.  Rule 609 is based upon the "common sense proposition" that an individual who has "transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath."  See Walden v. Georgia-Pacific Corp., 126 F.3d 506, 523 (3d Cir. 1997).  Its purpose is to aid the jury in assessing the credibility of a witness.  Id.  In this case, witness credibility will play a decisive role in the jury's decision-making process.  As such, defendants should not be entirely prevented from pointing out the plaintiff's or his witness' felony history during cross examination.  The jurors should be allowed to consider such relevant information as they weigh the credibility of each witness's testimony, unless Rule 403 or Rule 609(b) demands otherwise.

Moreover, plaintiff has offered no compelling reason why the fact of these prior criminal convictions of the plaintiff and his witnesses, standing alone, should be wholly excluded due to unfair prejudice.  Although reference to felony convictions during witness impeachment does carry with it some danger of prejudice, it is not so overwhelming as to substantially outweigh the probative value under Rule 403 and thus justify a pretrial order excluding evidence of all convictions.  In particular, based on the facts of this case, the plaintiff's status as an inmate will be obvious to the jury.

Therefore, the fact that Ledcke and any other prisoner-witnesses are also convicted felons would not result in surprise or an unfair prejudice at trial, and it is only when the prejudicial impact of evidence becomes "unfair" that the evidence must be excluded. See Coleman v. Home Depot, Inc., 306 F.3d 1333, 1344 and n.6 (3d Cir. 2002). At this time, the potential prejudice of this form of impeachment, permitted by the rules of evidence, falls short of this threshold.

For the foregoing reasons, plaintiff's motion to entirely prevent defendants from introducing evidence of the plaintiff's criminal convictions will be denied. However, we recognize that the specific nature of these some of these charges adds a heightened element of prejudice to any cross examination which ventures into the criminal histories of inmate-witnesses or an inmate-plaintiff. When considering impeachment of a witness by prior violent crime convictions, we must be mindful of the fact that "A [violent crime] conviction ... has the potential to do more than create a credibility handicap. It has the potential to so prejudice the jury that its weighing of all the factual issues in the entire case may be impaired." Womack v. Smith, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012)(quoting, Tabron v. Grace, 898 F.Supp. 293, 296 (M.D. Pa.1995)). In such instances, when confronted with a conviction which may be used under Rule 609 to impeach, but whose underlying qualities have an extremely high potential for prejudice, the trial judge may, in the

exercise of discretion, adopt a middle course with respect to the issue of impeachment and permit "admission of less prejudicial evidence-namely, the fact of [the witness'] conviction of a crime and resulting imprisonment without further detail." Perryman v. H & R Trucking, Inc., 135 F. App'x 538, 541 (3d Cir. 2005), see, Womack v. Smith, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012)(permitting disclosure of fact of plaintiff's conviction, without disclosure of offense of conviction).

This is the course we will adopt here, permitting cross examination of the plaintiff on the fact of various prior convictions and the resulting imprisonment, without any further detail.  Such an approach in our view reconciles the probative value of convictions for impeachment purposes, while minimizing any unfair prejudice which may spring from the precise nature of the crime of conviction. Moreover, this course of action fits squarely within the framework of Rule 609(a)(1), which provides that:  "evidence that a witness other than an accused has been convicted of a crime *shall be admitted, subject to Rule 403*, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused."  Fed. R. Evid., Rule 609(a)(1).  Finally, by adopting this course we follow a path expressly endorsed by

the courts in the past when confronting similar issues of this type relating to the proper scope of impeachment by prior convictions.  See, e.g., Perryman v. H & R Trucking, Inc., 135 F. App'x 538, 541 (3d Cir. 2005); Womack v. Smith, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012)(permitting disclosure of fact of plaintiff's conviction, without disclosure of offense of conviction).

Finally, with respect to the plaintiff himself, we note that the motions in limine touch upon a separate potential basis for admission of details concerning the plaintiff's criminal history, which has been marked by violent crimes, including acts of violence within the institutional setting.  The plaintiff has brought an excessive force claim against the defendants arising out of an August 2010 incident in the prison.  The keystone to analysis of an Eighth Amendment excessive force claim entails issues of motivation–whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  Therefore, excessive force claims often turn on factual disputes which cannot be resolved as a matter of law.  Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000).  Consistent with this fact-bound approach to litigation of these claims, there are several factual considerations that a jury must examine in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including:  "(1) 'the need for the application of force'; (2) 'the

relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" Id. at 106.

When considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396-7 (1989). Moreover, in the context of prison excessive force claims, in determining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," Hudson v. McMillian, 503 U.S. 1, 6-7 (1992), "even if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused. . . , any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'" Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000).

Given this fact-bound approach, which examines "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them," Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000),

an inmate's known propensity for violence would be pertinent to a determination of the quantum of force needed in a correctional setting to restore or maintain order. Thus, this evidence is relevant to the issues in this case since "Relevant evidence," is defined in Federal Rule of Evidence 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Considering this evidence in the context of the claims brought in this case, if the individual corrections officers were aware of the plaintiff's prior criminal conduct and propensity for violence while incarcerated, and this information helped to form a basis to assess the threat level that the plaintiff presented, then "knowledge of such history would be relevant to the inquiry as to whether the force used against plaintiff was reasonable under the circumstances." Smith v. City of Philadelphia, Civ. A. No. 06-4312, 2009 WL 3353148, at *2 (E.D. Pa. Oct. 19, 2009) (claims of excessive force against corrections officers) (citing Virgin Islands v. Carino, 631 F.2d 226, 229 (3d Cir. 1980) ("If it can be established that the accused knew at the time of the alleged crime of prior violent acts by the victim, such evidence is relevant as tending to show a reasonable apprehension on the part of the accused.")).

However, to the extent this evidence is offered for purpose found to be permissible, since it informs "the extent of the threat to the safety of staff and

inmates, as reasonably perceived by responsible officials on the basis of the facts known to them," Brooks, 204 F.3d at 106, it will be admissible subject to the limitations imposed by Rules 402 and 403 of the Federal Rules of Evidence.[1] This Rule 403 balancing of probative value and prejudicial impact also cautions against permitting detailed testimony in this case regarding the specifics of Ledcke's prior convictions, an approach endorsed in the past by this court. See Womack v. Smith, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012) Thus, in assessing the degree of force that the defendants perceived was necessary on August 2010, "Defendants may testify to their knowledge that [Ledcke] was convicted of crimes of violence and the length of his sentences," Womack v. Smith, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012), but defendants may not describe the specific nature of those offenses.

---

[1] Rule 403 of the Federal Rules of Evidence provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

### III.   Ledcke's Requests for Subpoenas Will Be Denied

The plaintiff has also filed a motion seeking to have the Court issue him 15 blank subpoenas that he may use to compel unidentified persons to appear at his trial and provide testimony.  (Doc. 128.)   The motion was very general, and seems intended to provide the plaintiff the flexibility to issue subpoenas at his own discretion, for up to 15 witnesses, but provided no other information to explain who these witnesses might be, where they might be located, what they are expected to say if they are called to testify at trial, or how their testimony may be relevant to the claims in this case.  At our direction, Ledcke provided a proffer of relevance relating to these witnesses, but that proffer is not helpful, since the persons listed in the proffer far exceed the number of subpoenas initially sought by Ledcke, and the proffer seems to range far afield from the sole issue in this lawsuit, the question of whether Ledcke was subjected to excessive force on August 9, 2010.

Also absent from the plaintiff's motion is an acknowledgment that he is required under federal law to bear the costs associated with the subpoenas, including the witness fees prescribed by 18 U.S.C. § 1821.  The plaintiff, who is proceeding *in forma pauperis*, does not indicate whether he has the financial resources to pay the required witness fees.  We are committed to providing all parties a fair trial and a full opportunity to present their cases, but upon consideration of this specific request, the

13

plaintiff's motion for blank subpoenas will continue to be denied at this time since the plaintiff has not demonstrated that he has the ability to pay for the expenses of non-party, non-incarcerated witnesses who the plaintiff expects to testify at trial. Federal law provides that non-incarcerated witnesses are entitled to, *inter alia*, per diem fees and other expenses.  See 28 U.S.C. § 1821; see also 28 U.S.C. § 1821(f) (providing that witnesses who are incarcerated may not receive fees or allowances under the statute).  Generally, therefore, plaintiffs – including those proceeding *in forma pauperis* – are required to pay the fees and costs for non-incarcerated witnesses who are subpoenaed to testify at deposition or trial.  See Jacobs v. Heck, 364 F. App'x 744, 748 (3d Cir. 2010) (unpublished) (court did not err in holding that inmate must pay the fees and costs for any prison official he wished to subpoena for trial); see also Canady v. Kreider, 892 F. Supp. 668, 670 (M.D. Pa. 1995) (finding no statutory provision authorizing a federal court to waive or finance the payment of witness fees required by 28 U.S.C. § 1821(a) and holding that "a litigant proceeding *in forma pauperis* is required to tender witness fees as provided in § 1821 to effect service of subpoenas under Rule 45(b)(1)").  Accordingly, courts will typically require plaintiffs like Ledcke to demonstrate that they have the ability to pay these fees and expenses prior to authorizing the issuance of a subpoena that commands a witness to appear.  See, e.g., Jackson v. Russel, __ F. Supp. 3d __, 2015 WL 4915516

(D. Del. Aug. 17, 2015); Dupree v. Doe, No. 10-351, 2014 WL 587136 (D. Del. Feb. 12, 2014); Allen v. Prince, No. 99-938, 2012 WL 1133687 (D. Del. Mar. 30, 2012); see also Pedraza v. Jones, 71 F.3d 194, 196 n.4 (5th Cir. 1995) (an inmate proceeding in forma pauperis in a civil action may not issue subpoenas without paying the required fees); Fernandez v. Kash N'Karry Food Stores, Inc., 136 F.R.D. 495, 496 (M.D. Fla. 1991) (witness and mileage fees required to be paid by indigent plaintiff).

We had previously explained these requirements to Ledcke in a November 5, 2015 order, (Doc. 130.), but to date Ledcke has not complied with these requirements by either: (1) providing witness fees as required by law; or (2) providing a sufficient proffer of the relevance of these witnesses' testimony to the remaining and narrowly defined issues in this case. Therefore, we will DENY his request for subpoenas without prejudice to the plaintiff renewing his request for relief, provided he makes the required showing that the Court has explained above. We note, however, that some of the witnesses sought by Ledcke are prison staff. We will, therefore, request that defense counsel determine whether any of these individuals would potentially be voluntarily made available to testify at trial, and be prepared to report on this matter at the pre-trial conference set in this case.

15

## IV.   Ledcke's Motion to Continue is Denied

Finally, Ledcke has moved to continue this trial, asserting that he anticipates undergoing an MRI examination sometime in the future and speculating that the results of this 2016 MRI may be admissible in a trial relating to an alleged excessive force incident which occurred five years earlier, in August 2010.  For the reasons set forth below, we will DENY this motion.

Rulings on requests for extension of time rest in the sound discretion of the court.  Miller v. Ashcroft, 76 F. App'x  457, 461 (3d Cir. 2003).  That discretion is guided, however, by certain basic principles.  Thus, under this abuse of discretion standard, a trial court's control of its docket will not be disturbed " 'except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant' "  Id., (citations omitted).   Moreover, any party challenging a ruling denying a continuance request, "ha[s] a heavy burden to bear, . . ., as matters of docket control and conduct of [litigation] are committed to the sound discretion of the district court."  In re Fine Paper Antitrust Litigation 685 F.2d 810, 817 (3d Cir. 1982)(citations omitted).  Furthermore, when exercising this discretion, we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice.  See Fed.R.Civ.P. 1.  Often that will mean that courts should strive to resolve cases on their merits whenever possible.  However,

16

justice also requires that the merits of a particular dispute be placed before the court in a timely fashion . . . ."  <u>McCurdy  v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d. Cir 1998)(affirming denial of request for extension of time).

In this case, the acts alleged by Ledcke occurred on August 9, 2010, almost five years ago.   This lawsuit commenced in  August 2012, more than 3  years ago. Discovery closed in this case on November 6, 2013, more than two years ago.  (Doc. 76.)   Furthermore, we have scheduled this case for trial now on three separate occasions, extending these deadlines at the plaintiff's request, only to be confronted by  new and  additional requests  for  extension of  time.   (Docs. 122, 127,135.) Recognizing that "justice . . . requires that the merits of a particular dispute be placed before the court in a timely fashion . . . ," <u>McCurdy  v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d. Cir 1998)(affirming denial of request for extension of time), we believe that the time has now come for the trial of this case on its merits.

In particular, we note that Ledcke's request for a continuance of this trial, which is based upon some speculative efforts to obtain additional discovery, is entirely inappropriate given that the discovery deadline in this case passed several years ago.

This  motion calls upon the Court to exercise its authority to regulate discovery in this case.  Issues relating to the scope and timing of discovery permitted under the

Rules rest in the sound discretion of the Court.  <u>Wisniewski v. Johns-Manville Corp.</u>, 812 F.2d 81, 90 (3d Cir. 1987).  A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. <u>Marroquin-Manriquez v. I.N.S.</u>, 699 F.2d 129, 134 (3d Cir. 1983).

This discretion is guided, however, by certain basic principles.  One essential attribute of the court's discretion in this field is that the court may, and indeed must, set schedules for the completion of discovery.  When a party fails to abide by those schedules the court has the right, and the duty, to impose sanctions for that failure. Those sanctions may, in the discretion of the court, include declining a party's request to compel compliance with untimely and improper discovery demands.  Thus, where a party has submitted an untimely discovery request, the court can, and in the exercise of its discretion often should, refuse to compel compliance with that request.  <u>See, e.g.</u>, <u>Maslanka v. Johnson & Johnson</u>, 305 F.App'x 848 (3d Cir. 2008)(affirming denial of *pro se* litigant motion to compel where discovery demands were untimely); <u>Oriakhi v. United States</u>, 165 F.App'x 991 (3d Cir. 2006)(same); <u>Bull v. United States</u>, 143 F.App'x 468 (3d Cir. 2005)(same).  As the court of appeals has noted in rebuffing a similar effort by a tardy prisoner-litigant to conduct belated discovery:

> [W]e discern no abuse of discretion with respect to [the inmate-plaintiff's] discovery and trial preparation issues.  <u>See</u> <u>Petrucelli v. Bohringer and Ratzinger</u>, 46 F.3d 1298, 1310 (3d Cir.1995) (applying

18

"abuse of discretion standard when reviewing orders regarding the scope and conduct of discovery"). [The inmate-plaintiff] filed a motion to compel discovery after . . . after the expiration of the court-ordered discovery period. The record confirms the District Court's conclusion that [the inmate-plaintiff] failed to seek leave of court to extend the discovery period. . . .".

Oriakhi, 165 F.App' x. at 994.

Here, Ledcke wishes to delay this trial yet again so that he may pursue a wholly speculative discovery foray, a 2016 MRI exam which he hopes may be relevant to an August 2010 incident. Ledcke makes this speculative request more than two years after the discovery deadline in this lawsuit has closed. Since the discovery request is improper and untimely it does not provide grounds for a further continuance of this case and the motion to continue is DENIED.

An appropriate order follows:

## **ORDER**

IT IS ORDERED as follows:

1.      The plaintiff's motion to preclude the defendants from filing any motions in limine (Doc. 139.) is MOOT and is DISMISSED.

2.      The plaintiff's motion to continue the trial (Doc. 142.) is DENIED.

3.      The plaintiff's motion in limine is GRANTED, in part, and DENIED, in part, as follows:  Defendants will be permitted to cross examine plaintiff

on the fact of his various prior impeachable convictions and the resulting imprisonment, without eliciting any further detail. "Defendants may testify to their knowledge that [Ledcke] was convicted of crimes of violence and the length of his sentences," <u>Womack v. Smith</u>, 1:06-CV-2348, 2012 WL 1245752 (M.D. Pa. Apr. 13, 2012), but defendants may not describe the specific nature of those offenses.

4.    The following trial schedule shall remain in effect in this case:

Pretrial conference:       **January 19, 2016, at
                          10:00 a.m. via videoconference.**

Trial:                     **February 8, 2016, at 9:30
                          a.m., Williamsport,
                          Pennsylvania.**

So ordered this 7th day of January 2016.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge